DOUGLASS *vs.* BOYLSTON *et al.*, surviving partners.

1. Where an attorney at law, prior to 1868, received and receipted for a promissory note placed in his hands for collection, though he col- lected and failed to pay over the amount thereof subsequently to that time, the contract began from the date of the receipt, and in a contest between the claim of the client and the homestead right of the attorney's wife and children, the former took precedence.
CRAWFORD, J., concurred *dubitante.*

2. The homestead in this case was properly granted.

(*a.*) The ordinary may order money due the head of a family, to be paid to him, to be by him invested according to law, and when it has been invested and a schedule of the property has been attached, he may then pass a final order of exemption. This case is distin- guished from 65 *Ga.*, 546 ; *Johnston vs. Dobbs* (this term.)
October 24, 1882.

Douglass *vs.* Boylston *et al.*, surviving partners.

Money Rule.  Attorney and Client.  Homestead.  Constitutional Law.   Before J. H. GUERRY, Esq., Judge *pro hac vice*.   Randolph Superior Court.   May Term, 1882.

A *fi. fa.* in favor of E. L. Douglass and L. D. Monroe against R. D. Carter was levied on certain property, which was sold ; the money being brought into court for distribution, various claims were filed thereto.   Among others Boylston *et al.*, surviving partners, claimed that portion of the fund which would be going to Douglass by virtue of a *fi. fa.* against him.   His wife, Mrs. Douglass, was made a party, and prayed that the fund be paid to the ordinary to be invested in a homestead for the benfit of herself and minor child.   An issue was formed between these claimants, which was submitted to the presiding judge without a jury.   The evidence showed, in brief, the following facts :

Prior to 1868, E. L. Douglass, who was an attorney at law, received from Crane, Boylston & Co., of whom Boylston *et al.* are the surviving partners, certain claims for collection.   He collected a portion of the amount due on them in 1869, and made a further collection in 1872.   In 1876 his clients ruled him for the amount collected, and in 1878 obtained a rule absolute against him ; and upon this their *fi. fa.* is founded.   In January, 1882, Mrs. Douglass, the wife of E. L. Douglass, filed her petition for a homestead, alleging that her husband refused so to do.   The schedule of property contained but two items, namely, the one-half undivided interest of the petitioner's husband in the money held by the sheriff, which she valued at one thousand dollars, and her husband's law library, valued at two hundred dollars.   The ordinary passed an order (after the usual notice, etc.,) requiring that when it should be ascertained what was the amount going to E. L. Douglass, it should be paid to the ordinary to be invested by him according to law, and when so invested a schedule of the property purchased should be attached to the application and finally allowed as exempt.

Under these facts, the presiding judge awarded the fund to Boylston *et al.*, surviving partners, holding their claims to be superior to the wife's right to a homestead. To this judgment Mrs. Douglass excepted.

A. HOOD, JR., for plaintiff in error.

JNO. T. CLARKE & SON, for defendants.

JACKSON, Chief Justice.

1. Two questions are made in this record: First, does the debt or liability of an attorney at law to his client date from the time he receives and receipts for a note for collection, or from the time when he collects the money, so as to give the creditor and client of the attorney pref erence to a fund in the sheriff's hands belonging to the attorney, over the right of the widow and child of the attorney to a homestead out of it, the receipt of the attorney antedating the constitution of 1868, and the actual collection of the money by the attorney being subsequent to that constitution? If the obligation of the attorney's contract was incurred when he gave his receipt, it being before 1868, his client's debt antedates the constitution of 1868, and the homestead is a nullity as to such debt, 50 *Ga.*, 81, and succeeding cases, following Gunn *vs.* Barry in 15th Wallace. When, then, was the date of the attorney's contract and obligation to his client, so that the attorney could not set up a homestead right in property he had against it? Was it when he gave his receipt or when he got the money?

Under the rulings of this court, it is the date of the contract, and not of the breach of it, that governs in respect to the priority of the creditor's claim over that of the homestead. 54 *Ga.*, 551; 61 *Ib.*, 395; 63 *Ib.*, 162. The homestead is unconstitutional if it impair the obligation of the contract, and that is the principle upon which in 15th Wallace, *supra*, the supreme court of the United States reversed this court and held that the homestead

was void as to a debt prior to the time the constitution granted the homestead. So in 61 *Ga.*, 395, cited above, this court say, on page 397, "that the material date on the question of impairing contracts by after legislation, is the date of the contract, and not the date of breaking or violating the contract." And it was there held that where a covenant bore date prior to 1868, though the breach was afterwards, the covenantee as creditor held such a claim as made the right of homestead subordinate thereto. So in 63 *Ga.*, 162, it was held that even the surety to an administrator's bond, executed before the constitution of 1868, could not take homestead so as to defeat the breach of that bond, though the *devastavit* of the administrator did not occur until subsequently to that constitution.

What, then, is the contract of the attorney in the case before us now, and when was it made, so that its obligation would be impaired by after legislation? His contract is to collect this note and pay over the money collected to the client. The receipt for collection, without more, makes the contract. The breach of it is the failure to collect, if by the forms and process of the law it could be done, and by neglect or malfeasance the attorney did fail, or the failure to pay it over when collected. The obligation of the contract made when he contracted with the client was to do these things; that obligation would be impaired if he were permitted by subsequent legislation to take a homestead for his family with this money so collected in his pocket, and the right of his family to it after his death is the same, no more or less, than his when in life, so far as homestead is concerned.

Therefore, it appears from principle, as well as from the prior rulings of this court, cited *supra*, that the court below was right in ruling as the court did on this point.

2. This view makes it unnecessary to rule the second point, but that the homestead granted in this case is valid and in accordance with law, there can be no doubt. The facts as to the mode of setting apart the homestead and

disposing of the money by the ordinary's judgment in the cases in the 65 *Ga.*, 546, and in *Johnson et al. vs. Dobbs*, (this term), are unlike those in this case. But the first point is controlling, and a perfect homestead in form and law cannot take the money from the breach of this contract, the contract being prior to the date of the constitution of 1868, though the breach be subsequent to it.

Judgment affirmed.

SPEER, Justice, concurred.

CRAWFORD, Justice, concurring.

Believing as I do, that the liability of an attorney exists without reference to his receipt, it is extremely doubtful whether the failure to pay over money collected relates back to the date of the receipt, or begins with such failure; hence I concur in the judgment of the court in this case *dubitante*.